UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DARIUS LEIGH GILKEY,** | **2:17-CV-12753-TGB-APP** |
| Petitioner, | HON. TERRENCE G. BERG |
| vs. | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL** |
| **DEWAYNE BURTON,** | |
| Respondent. | |

Darius Leigh Gilkey, a Michigan state prisoner, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for first-degree premeditated murder, MCL § 750.316, and first-degree criminal sexual conduct, MCL § 750.520b(1)(e). The Court denies the petition and declines to issue a certificate of appealability. The Court grants Petitioner leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

Petitioner's conviction arose from the sexual assault and murder of Stephanie McGee in June of 2012. McGee's friend, Chemale Smith-Posey, testified that on June 7, 2012, she styled McGee's hair. ECF No. 7-8, PageID.480. Finishing at approximately 10:00 p.m., Smith-Posey

telephoned her boyfriend, Adrian Parker, so that he could give McGee a ride home. Parker arrived and began the drive to McGee's home. *Id.* at PageID.482–83. At some point, Smith-Posey and Parker started arguing. As tensions escalated, Parker pulled over, placed the car in park, and snatched the keys out of the ignition. *Id.* at PageID.484–85. Parker and Smith-Posey exited the car and continued arguing. Smith-Posey recalls hearing McGee call someone for a ride, then watching McGee walk down the street to wait outside a liquor store. Meanwhile, police arrived to investigate the disturbance. After police finished speaking to Smith-Posey and Parker, McGee was no longer standing outside the liquor store. *Id.* at PageID.487–89.

Bobby Moore testified that McGee called him that night and asked whether he could drive her home. She said she would wait outside the liquor store. Fifteen minutes later, Moore arrived, but McGee was gone. Moore called McGee several times but could not get an answer. He waited in front of the store for about thirty minutes, but McGee never appeared. *Id.* at PageID.500–01.

On June 9, 2012, police received a report of a dead body, later identified as McGee, at a burned abandoned house not far from where McGee was last seen alive. *Id.* at PageID.427–28. Dr. Carl Schmidt, Chief Medical Examiner for Wayne County, testified that he performed an autopsy on June 9 or 10, 2012. Dr. Schmidt concluded that McGee's killing occurred one-and-a-half to two days before her body was found.

2

McGee had multiple stab- and incised- wounds.[1] *Id.* at PageID.402–404. One stab wound penetrated her carotid artery, and two others perforated her chest cavity. *Id.* at PageID.408–09. Dr. Schmidt determined that the manner of death was homicide. *Id.* at PageID.416.

Andrea Young testified as an expert in DNA and body fluid analysis. ECF No. 7-9, PageID.636. She tested semen found in McGee's mouth and blood samples from under McGee's fingernails. The DNA profile from these samples matched Petitioner's DNA. *Id.* at PageID.644–52.

Evidence of the rape and murder of Quaylana Rogers was also admitted at Petitioner's trial to show a common plan or scheme. The circumstances of Rogers' abduction, sexual assault, and murder were similar to McGee's; and Petitioner's DNA was detected in semen found in Rogers' vagina and underwear. *Id.* at PageID.652–53.

The jury convicted Petitioner of first-degree murder and first-degree criminal sexual conduct. Petitioner was sentenced to life without parole for the murder conviction and a consecutive sentence of 35 to 50 years for the criminal sexual conduct conviction. ECF No. 1, PageID.1.

He filed an appeal in state court, claiming that (1) there was insufficient evidence to support his convictions, (2) he was denied his

---

[1] Dr. Schmidt explained that a stab wound is "deeper than it is long. And an incised wound…is longer than it is deep." ECF No. 7-8, PageID.407.

right to counsel when the trial court refused his request for appointment of new counsel, and (3) the trial court improperly admitted evidence related to Rogers' murder. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Gilkey*, No. 323507, 2016 WL 362661 (Mich. Ct. App. Jan. 26, 2016).

Petitioner subsequently applied for leave to appeal to the Michigan Supreme Court, raising the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied Petitioner's requested leave. *People v. Gilkey*, 500 Mich. 857, 883 N.W.2d 769 (2016).

Petitioner then filed the instant petition for a writ of habeas corpus. He asserts the following:

1. His conviction is supported by insufficient evidence;

2. He was constructively denied counsel, denied constitutionally effective assistance of counsel, and denied his right to counsel of choice; and

3. The admission of other-acts evidence was a violation of his right to due process.

## II. LEGAL STANDARD

A § 2254 habeas petition is governed by the heightened standard of review outlined in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter adjudicated on the merits in State court [must] show that the relevant state court decision (1) was contrary to, or involved an

4

unreasonable application of, clearly established Federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191, 200 L. Ed. 2d 530 (2018) (quoting 28 U.S.C. § 2254(d)).

The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Whether Sufficient Evidence Supports the Convictions

Petitioner argues that insufficient evidence was presented to support his convictions. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict and a second to the Michigan Court of Appeals decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017).

First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

The Michigan Court of Appeals rejected Petitioner's sufficiency-of-the-evidence argument:

The elements of first-degree murder are (1) the intentional

killing of a human (2) with premeditation and deliberation." *People v. Bennett*, 290 Mich.App 465, 472; 802 NW2d 627 (2010). In addition, identity is an element of every criminal offense. *People v. Yost*, 278 Mich.App 341, 356; 749 NW2d 753 (2008). "[C]ircumstantial evidence and reasonable inferences arising therefrom may constitute satisfactory proof of the elements of the offense." *People v. Unger*, 278 Mich.App 210, 223; 749 NW2d 272 (2008).

At trial, a medical examiner testified that SM's [Stephanie McGee's] cause of death was homicide. His conclusion was based on the multiple, deep stab wounds to SM's neck and chest, which resulted in massive blood loss and a collapsed lung. These facts are sufficient to show that the killing was intentional, thus establishing the first element of first-degree murder.

Premeditation requires that a defendant have time to take a "second look" before killing. *Unger*, 278 Mich.App at 229 (quotation marks and citation omitted). The medical examiner also testified that some of the wounds on SM's body were "torture wounds," made for the specific purpose of causing her pain. If defendant had time to inflict torture wounds, a reasonable trier of fact could infer that he also had time to take a second look before killing.

SM's body was found in an abandoned house. There was only a small amount of blood in the house where SM's body was found, and there were drag marks on her body. A reasonable factfinder could infer that the killer moved the body to the house to conceal the crime. Evidence that a defendant attempted to conceal the crime can also support a finding that the crime was premeditated. *People v. Gonzalez*, 468 Mich. 636, 642; 664 NW2d 159 (2003).

The final element is defendant's identity as the murderer. Defendant argues that the evidence only shows that he had sex with SM. However, there is sufficient evidence implicating

defendant in SM's murder, and the CSC [Criminal Sexual Conduct] inflicted upon her. SM was urgently seeking a ride home when she disappeared. At 11:14 p.m. she called her friend seeking a ride, and at 11:18 p.m. her telephone became invisible to the surrounding cellular towers. Her friend arrived at 11:30 p.m., and SM was nowhere to be found. SM was stabbed to death and her body was found topless with sperm in her mouth, and blood under a fingernail on the left hand. From these facts, a reasonable juror could infer that the killer took SM against her will, forced her to engage in fellatio by threatening her with a knife or similar object, and then killed her. Based on trial testimony, a reasonable juror could also infer that SM tried to defend herself, and that the attacker's blood was thus deposited under her fingernail. Based on the DNA evidence that the blood and sperm came from defendant, a reasonable juror could infer that defendant committed the offenses for which he was convicted.

Defendant was also convicted of violating MCL 750.520b(1)(e), which states that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and…[t]he actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon." Sexual penetration means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

The presence of semen in the oral cavity of SM's body could lead a reasonable trier of fact to conclude that sexual penetration occurred. The manner of SM's death, stabbing, could lead a reasonable factfinder to infer that defendant had a weapon. There was thus sufficient evidence of CSC.

*Gilkey*, 2016 WL 362661, at *1–2.

Petitioner maintains that, while DNA evidence linked him to semen found in the victim's mouth, no evidence was presented to show that the sexual encounter was non-consensual. The evidence in this case is sufficient, if not ample, for a rational trier of fact to conclude that Petitioner sexually assaulted and killed McGee.

McGee's extensive injuries alone—including "torture wounds" and deep stab wounds—support a finding that the sex act was non-consensual. In addition, after she exited Parker's car, McGee, anxious to go home, called Bobby Moore and said she would wait for him outside the liquor store. No evidence was presented to show that McGee would have willingly abandoned that plan. "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008) (quotation omitted). The Michigan Court of Appeals rejection of Petitioner's sufficiency-of-the-evidence claim was neither contrary to, or an unreasonable application of, Supreme Court precedent; nor was the rejection based on an unreasonable determination of the facts in light of the evidence presented at trial.

## B. Whether Petitioner's Rights Were Violated by the Failure to Appoint Substitute Counsel

Petitioner's second claim concerns the trial court's denial of his request for substitute counsel. Four days before trial commenced, the

court held a hearing regarding Petitioner's letter to the court "request[ing] that he be allowed to terminate the services of his current attorney[.]"[2] ECF No. 7-6, PageID.234. Defense counsel explained that the request was made because Petitioner and counsel disagreed about whether to obtain a DNA expert. Counsel consulted with "several DNA experts," but the compensation provided by the court on behalf of indigent defendants was insufficient to retain an expert. *Id.* at 234. Counsel posited that, in any event, an expert would have little to offer in aid of the defense. *Id.* at 234–35. Counsel also concluded that concern about the chain of custody of Petitioner's buccal swab was a factual inquiry to which an expert could not speak. *Id.* Petitioner also complained that defense counsel had "missed appointments." *Id.* at 236. Ultimately, the trial court denied Petitioner's request:

> I find…that there's been insufficient basis for a substitution [of] counsel on this matter. I do find that [counsel] has done what's necessary to represent Mr. Gilkey. The motion by Mr. Gilkey to terminate the services of his current lawyer, [and] hire a new lawyer is denied at this time.

*Id.* at PageID.236.

Petitioner, citing *United States v. Cronic*, 466 U.S. 648 (1984), argues that a complete breakdown in the attorney-client relationship amounted to the constructive denial of counsel—a structural error requiring automatic reversal. *See* ECF No. 7-12, PageID.854–58; ECF

---

[2] A copy of Petitioner's letter is not part of the record before the Court.

No. 22, PageID.1068–70. He maintains that he was denied his right to counsel of choice. Alternatively, he argues that counsel was ineffective and that counsel's errors prejudiced the defense. Petitioner further claims that the trial court failed to inquire adequately into the attorney-client relationship breakdown. *Id.*

On direct review, the Michigan Court of Appeals determined that Petitioner failed to show good cause for replacing his appointed counsel. *Gilkey*, 2016 WL 362661, at \*2–3. The court of appeals concluded that defense counsel's decisions regarding the DNA were carefully considered exercises of professional judgment and trial strategy. *Id.* at \*3. It further noted that—after the trial judge explained to Petitioner retesting the DNA was not without its risks because a second test could yield the same result—Petitioner appeared to concede the point. *Id.* Finally, the state court held that the difference of opinion did not result in a breakdown in the attorney-client relationship necessitating the appointment of new counsel. *Id.*

The Sixth Amendment provides all criminal defendants the right to the effective assistance of counsel, including a qualified right to retain counsel of one's choice. *Wheat v. United States*, 486 U.S. 153, 159 (1988). The right to counsel of choice is not without limits: it "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (citation omitted); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617,

11

624–25 (1989) (noting "[t]he [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). The Sixth Amendment guarantees "an effective advocate for each criminal defendant rather than…ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. So "when a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001).

Accordingly, an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution [of counsel.]" *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). When evaluating a trial court's denial of a request to substitute counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012).

Petitioner's request was made shortly before trial, involved a discrete issue not implicating the whole of counsel's representation, and

was carefully considered by the trial court; Petitioner has shown no irreconcilable conflict with appointed counsel that necessitated substitution of counsel.

Petitioner argues for, the first time, in his habeas petition that he sought to replace appointed counsel with *retained* counsel. He states he "was indigent at the time trial began, but had finally secured access to finances solely for the purpose of paying for legal counsel." ECF No. 1, PageID.47. Therefore, he claims, the trial court's decision violated his right to counsel of choice, a structural error requiring no additional showing of ineffectiveness or prejudice.[3] *Id.* at PageID.46.

The right to counsel encompasses the right for non-indigent defendants to be represented by their counsel of choice. *Gonzalez-Lopez*, 548 U.S. at 151. But this right is not absolute. A trial court need not honor a request to retain counsel that would "unreasonably interfere with the normal progress of a criminal case." *Linton v. Perini*, 656 F.2d 207, 211 (6th Cir. 1981). A trial court retains "wide latitude in balancing the right

---

[3] The Court briefly addresses the question of exhaustion of this claim. *See Clinkscale v. Carter*, 375 F.3d 430, 436–37 (6th Cir. 2004) (on federal habeas review, a court may sua sponte raise non-exhaustion). A state prisoner must exhaust available state court remedies before seeking habeas corpus relief by fairly presenting all his claims to the state courts. *See* 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005). Petitioner's claim that he sought to substitute retained counsel is not properly exhausted. But because exhaustion is not a jurisdictional bar to review, the Court will proceed to the merits. *See Granberry v. Greer*, 481 U.S. 129, 131, 134–35 (1987).

to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 151–52 (citations omitted).

Petitioner requested a new lawyer only shortly before trial commenced. While he maintains that he sought to substitute *retained* counsel, Petitioner did not inform the trial court that a specific lawyer had been hired and, even now, states only that he had the funds to hire a lawyer. At no point has he provided any additional information regarding counsel or what steps he intended to take or had taken to secure counsel. Furthermore, allowing Petitioner to retain counsel would have likely required a continuance. "When a request for substitute counsel would 'almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *Id.* at 779 (quoting *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)). Without an identified counsel of choice or any particulars regarding progress made to retain an attorney, Petitioner has not shown that the trial court abused its discretion when balancing his right to counsel of choice against concerns of fairness and scheduling.

Petitioner also claims that defense counsel's failure to call an expert witness in DNA analysis or to move to retest the DNA rendered counsel ineffective. He claims that the error was so egregious as to constitute the constructive denial of counsel and that prejudice, therefore, should be presumed under *Chronic*. *See* ECF No. 22, PageID.1066–70.

To show the violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must show that (1) the counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Under certain egregious circumstances, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," a constructive denial of counsel occurs. *Cronic*, 466 U.S. at 659. When there is a constructive denial of counsel, a defendant need not show prejudice to establish ineffective assistance of counsel. *Id.* at 658–59. However, *Cronic*'s presumption of prejudice is applied only where "the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear." *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (quoting *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002)). For a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, the attorney's failure "must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002).

Here, counsel's supposed errors did not rise to a constructive denial: counsel actively represented Petitioner at trial, effectively cross-examined the prosecutor's witnesses, made timely objections, and presented a cohesive defense. Nothing in the record makes imminently clear a collapse of the adversarial system.

Since Petitioner fails to show that the *Cronic* analysis applies, the Court now considers the two-pronged *Strickland* standard. A claim that trial counsel was ineffective for failing to call an expert witness cannot rest on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). "In the absence of any evidence showing that [an uncalled witness] would have offered specific favorable testimony, [a petitioner] cannot show prejudice from counsel's…[failure to present a witness]." *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005). Petitioner puts forward no support for his argument that an expert witness would have aided the defense; his unsupported, speculative arguments are insufficient to warrant habeas relief.

Finally, Petitioner's claim that counsel failed to meet with him enough before trial is meritless: "[T]he mere fact that counsel spent little time with [a defendant] is not enough under *Strickland*, without evidence of prejudice or other defects." *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003). In the instant case, Petitioner has neither shown that counsel's consultation with him was insufficient, nor has he demonstrated how additional consultation would have altered the trial

outcome. *See Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (holding that the petitioner, unable to demonstrate any resulting prejudice, could not prevail on claim that attorneys were ineffective due to infrequent pre-trial visits).

## C. Whether the Admission of Other Act Evidence Violated Due Process

In his third claim, Petitioner challenges the admission of evidence related to the murder of Quaylana Rogers ("QR"). The Michigan Court of Appeals held this evidence properly admitted under the Michigan Rules of Evidence ("MRE"):

> The trial court properly admitted the evidence of QR's killing. MRE 404(b)(1) provides:
>
>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the mistake is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior to subsequent to the conduct at issue in the case.
>
> Pursuant to *Sabin*, 463 Mich. at 65, when a plan or scheme is sufficiently similar, evidence of another act may be used for the inference that a defendant used the same plan or scheme in the charged offense.
>
> In general, this Court reviews a trial court's decision

regarding the admissibility of other-acts evidence for an abuse of discretion. However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. Questions of law are reviewed de novo. [*People v. Dobek*, 274 Mich. App. 58, 84–85; 732 N.W.2d 546 (2007) (citations omitted).]

A trial court's decision on a close evidentiary issue cannot ordinarily be an abuse of discretion. *Sabin*, 463 Mich. at 67.

Evidence of similar conduct can be used to show that the charged offense occurred, even when not part of a "single continuing conception or plot," when the "uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of the common plan, scheme, or system." *Sabin*, 463 Mich. at 63–64. The *Sabin* Court affirmed the lower court's admission of MRE 404(b)(2) evidence regarding sexual abuse of a girl, to show sexual abuse of a different girl, where the victims both had a father-daughter relationship with the defendant, both victims were of similar age, and the defendant used parental authority to manipulate both victims into silence by suggesting that they would break up the family if they told anyone about the abuse. *Id*. However, there were also significant differences between the charged act and the act admitted pursuant to MRE 404(b). *Id*. The defendant performed oral sex on one victim, frequently over a period of years, at night, in the victim's bedroom. *Id*. The other victim suffered one isolated act of sexual intercourse committed in the afternoon. *Id*. Despite these differences, the *Sabin* Court did not find the trial court abused its discretion in admitting the evidence. *Id*.

There are significant similarities between SM's and QR's murders. Both killings involved young, petite black women. Both were taken at night, in Detroit, 12 days apart. They were both forced into sexual acts, and semen was deposited in both

of their bodies. Both victims were stabbed in the neck, and died of stab wounds. Both bodies were concealed in vacant areas. Their assaults and murders occurred within close proximity to each other. While there were some differences, the crimes were at least as similar as the crimes in *Sabin*. *Id*. The trial court did not abuse its discretion in admitting the other acts evidence.

Defendant also argues that the trial court abused its discretion in not excluding the other acts evidence under MRE 403. MRE 403 states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v. Crawford*, 458 Mich. 376, 398; 582 N.W.2d 785 (1998). "[T]here is a heightened need for the careful application of the principles set forth in MRE 403" when the trial court admits other acts evidence under MRE 404(b). *Id*.

Defendant argued that he did not commit these crimes, meaning he disputed, in part, whether he committed the actus reus of the offenses. In *Sabin*, the Michigan Supreme Court declined to find an abuse of discretion because "the evidence was admissible to show the actus reus of the offense." *Sabin*, 463 Mich. at 70–71. Thus, while there was a risk of undue prejudice, the evidence was also highly probative.

Defendant further argues that the admission of evidence related to QR's killing was so fundamentally unfair that it violated defendant's Fourteenth Amendment right to due process. US Const, Am XIV. This issue is unpreserved because defendant did not move for a new trial on this basis. This Court reviews allegations of unpreserved constitutional error for plain error. *People v. Carines*, 460 Mich. 750, 774; 597

N.W.2d 130 (1999). This requires that: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. In addition, "[t]he reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 774. As discussed above, defendant has not demonstrated that the trial court committed any error, much less plain error.

*Gilkey*, 2016 WL 362661, at *3–5.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. First, to the extent that Petitioner raises this claim as a violation of state law, his claim is not cognizable on federal habeas review. *Shoemaker v. Jones*, 600 F.App'x 979, 984 (6th Cir. 2015). No clearly established Supreme Court precedent holds that a state violates due process by introducing other bad acts evidence. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The Supreme Court has discussed when other acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms—finding admission of such testimony more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling v. United States*, 493 U.S. 342, 352 (1990). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of § 2254(d)(1). *Bugh*, 329 F.3d at 513.

20

Second, Petitioner fails to establish a due process violation. The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh*, 329 F.3d at 512. The Supreme Court "define[s] the category of infractions that violate fundamental fairness very narrowly." *Estelle v. McGuire*, 502 U.S. 62, 73 (1991). An evidentiary decision must "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" to violate due process. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted). This standard accords the state courts "wide latitude…with regard to evidentiary matters under the Due Process Clause[.]" *Id.*

Here, the trial court acted well within the bounds of due process when it admitted evidence of Rogers' murder. For the reasons the Michigan Court of Appeals discussed, the challenged evidence was relevant and probative. The trial court considered the evidence's relevance, purpose, and potential for prejudice. This Court has no basis on which to conclude that the admission of this evidence led to the denial of fundamental fairness. Relief is denied on this claim.

## IV. CONCLUSION

The Court **DENIES** the petition for a writ of habeas corpus. The Court further finds that reasonable jurists would not debate this Court's resolution of Petitioner's claims, so the Court **DENIES** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). If Petitioner nonetheless chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3). This case is **DISMISSED WITH PREJUDICE.** This is a final order that closes this case.

**SO ORDERED** this 19th day of January, 2024.


Dated: January 22, 2024          /s/Terrence G. Berg
                                 HON. TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served via electronic and/or ordinary mail.

Dated: January 22, 2024                    By: /s/Linda Vertriest
                                                Case Manager

             BY THE COURT:

             /s/Terrence G. Berg
             HON. TERRENCE G. BERG
             UNITED STATES DISTRICT JUDGE